Sheehan & Associates, P.C.
Spencer Sheehan
60 Cuttermill Rd Ste 409
Great Neck, NY 11021-3104
Telephone:  (516) 303-0552
spencer@spencersheehan.com

United States District Court
Southern District of New York                              7:20-cv-07498

| | |
|---|---|
| Regina Carter, individually and on behalf of all others similarly situated,<br><br>                                    Plaintiff,<br><br>                - against -<br><br>Nestlé USA, Inc.,<br><br>                                    Defendant | Class Action Complaint |

        Plaintiff by attorneys allege upon information and belief, except for allegations pertaining

to plaintiff, which are based on personal knowledge:

        1.      Nestlé USA, Inc. ("defendant") manufactures, distributes, markets, labels and sells

vanilla dairy creamer under its "Coffee Mate Natural Bliss"  brand ("Product").

        2.      The Product is available to consumers from retail and online stores of third-parties

and is sold in sizes including 16 OZ.

        3.      The relevant front label representations include "Vanilla Flavor," "All Natural,"

"Made with Real Milk & Cream," "All-Natural Coffee Creamer," cured vanilla beans beneath a

vanilla flower and the brand, "Coffee Mate Natural Bliss."



4.     The representations are misleading because the Product contains artificial, non-vanilla flavors not disclosed to consumers and less vanilla than consumers expect.

5.     Nielsen has reported that 62% of consumers say they try to avoid artificial flavors.[1]

6.     Another study by New Hope Network concludes that "71% of consumers today are

---

[1] Nielsen, Reaching For Real Ingredients: Avoiding The Artificial, Sept. 6, 2016.

avoiding artificial flavors."[2]

7.    Label Insight determined that 76% of consumers avoid products with artificial flavors.[3]

8.    Natural flavors "almost always cost[s] much more than an artificial flavor," so companies and consumers are willing to pay higher prices for the real thing – orange flavor from oranges and vanilla flavor from vanilla, as opposed to orange flavor synthesized from lemons or vanillin (the main flavor molecule in vanilla) derived from wood pulp or petroleum derivatives.[4]

9.    Flavoring ingredients, especially for products labeled as vanilla, are typically the most expensive ingredient in a food, and vanilla has reached record high prices in recent years.[5]

10.    Demand for real vanilla "has been steadily increasing…due to consumer demand for natural foods that are free of artificial ingredients."[6]

11.    According to one flavor supplier, today's consumers "want real vanilla, not imitation [vanilla] flavoring."

12.    Vanilla's "desirable flavor attributes…make it one of the most common ingredients used in the global marketplace, whether as a primary flavor, as a component of another flavor, or for its desirable aroma qualities."[7]

13.    Vanilla's unique flavor cannot be duplicated by science due to over 200 compounds scientists have identified, including volatile constituents such as "acids, ethers, alcohols, acetals,

---

[2] Alex Smolokoff, Natural color and flavor trends in food and beverage, Natural Products Insider, Oct. 11, 2019.
[3] Thea Bourianne, Exploring today's top ingredient trends and how they fit into our health-conscious world, March 26-28, 2018.
[4] David Andrews, Synthetic ingredients in Natural Flavors and Natural Flavors in Artificial flavors, Environmental Working Group (EWG).
[5] Finbarr O'Reilly, Precious as Silver, Vanilla Brings Cash and Crime to Madagascar, New York Times, Sept. 4, 2018.
[6] Chagrin Valley Soap & Salve Company, FAQs, Why Are The Prices of Vanilla Bean Products Always Increasing?
[7] Daphna Havkin-Frenkel, F.C. Bellanger, Eds., Handbook of Vanilla Science and Technology, Wiley, 2018; Kristiana Lalou Queen of flavors: Vanilla rises above transparency concerns to lead category, Food Ingredients First, Sept. 3, 2019 (describing vanilla as "versatile").

heterocyclics, phenolics, hydrocarbons, esters and carbonyls."[8]

14.    An example of the compounds which provide vanilla's flavor are shown in table below, identified through gas chromatography-mass spectrometry ("GC-MS") of a sample of Simply Organic Madagascar Vanilla Extract.

Table 2

Sheehan & Associates, P.C., Project #7643-2
Simply Organic Madagascar Pure Vanilla Extract
Production Code: 9274
Concentrated Ether Extract (Water-Soluble Components Washed Out) by GC-MS

Data File = TSQA4027

| MS Scan # | Area Integration | Peak Assignment | Peak Area % |
|---|---|---|---|
| 67 | 16132 | hexanal | 0.0206 |
| 71 | 16235 | butanediol isomer | 0.0207 |
| 81 | 57370 | butanediol isomer | 0.0732 |
| 103 | 36387 | 3-methylbutyric acid | 0.0464 |
| 115 | 33053 | furfural | 0.0422 |
| 141 | 27408 | butanal, diethyl acetal | 0.0350 |
| 262 | 18390 | 3-methylbutanal, diethyl acetal | 0.0235 |
| 281 | 25224 | hexanoic acid | 0.0322 |
| 289 | 2729 | methyl furfural | 0.0035 |
| 299 | 52183 | phenol + trace of benzaldehyde | 0.0665 |
| 349 | 2385 | 1H-pyrrole-2-carboxaldehyde | 0.0030 |
| 379 | 47287 | limonene + benzyl alcohol | 0.0603 |
| 397 | 13835 | heptanoic acid | 0.0176 |
| 409 | 31102 | gamma-hexalactone | 0.0397 |
| 415 | 19338 | p-cresol | 0.0247 |
| 425 | 4470 | hexanal, diethyl acetal | 0.0057 |
| 443 | 287479 | guaiacol | 0.3666 |
| 453 | 5947 | nonanal | 0.0076 |
| 477 | 10000 | phenylethyl alcohol | 0.0128 |
| 496 | 112067 | ? | 0.1429 |
| 505 | 44668 | benzoic acid + octanoic acid | 0.0570 |
| 522 | 4551 | diethyl succinate | 0.0058 |
| 536 | 2461 | ethyl benzoate | 0.0031 |
| 544 | 11769 | 1,2-benzenediol | 0.0150 |
| 555 | 145356 | 2-methoxy-4-methylphenol | 0.1854 |
| 567 | 2537 | methyl salicylate | 0.0032 |
| 587 | 8552 | hydroxy methyl furfural (HMF) | 0.0109 |
| 594 | 5555 | benzeneacetic acid | 0.0071 |
| 605 | 101562 | nonanoic acid | 0.1295 |
| 624 | 6802 | hydroquinone | 0.0087 |
| 631 | 3864 | 4-methoxybenzaldehyde (p-anisaldehyde) | 0.0049 |
| 642 | 6356 | ethyl nonanoate | 0.0081 |
| 653 | 53264 | 4-methoxybenzyl alcohol (p-anisyl alcohol) | 0.0679 |
| 676 | 14481 | cinnamyl alcohol | 0.0185 |
| 685 | 16094 | 3-hydroxybenzyl alcohol | 0.0205 |
| 718 | 12188570 | 3-hydroxybenzaldehyde + 4-ethoxymethylphenol | 15.5440 |
| 751 | 122634 | methyl cinnamte | 0.1564 |
| 759 | 60715743 | vanillin | 77.4301 |
| 796 | 90669 | methyl-p-methoxybenzoate (methyl paraben) | 0.1156 |
| 809 | 2228588 | vanillyl ethyl ether + trace of 4-hydroxy-3-methoxybenzyl alcohol | 2.8421 |
| 832 | 224829 | p-hydroxybenzoic acid | 0.2867 |
| 839 | 37335 | acetovanillone | 0.0476 |
| 892 | 950342 | vanillic acid | 1.2120 |
| 909 | 405589 | 3,4-dihydroxybenzaldehyde | 0.5172 |
| 935 | 82429 | 3,4-dihydroxy-5-methoxybenzaldehyde | 0.1051 |
| 954 | 6212 | ethyl homovanillate | 0.0079 |
| 975 | 78148 | syringealdehyde | 0.0997 |
| 1266 | 14130 | ethyl palmitate | 0.0180 |
| 1518 | 21477 | ethyl linoleate | 0.0274 |
| | 78413588 | Total | 100.0000 |

---

[8] Arun K. Sinha et al., "A comprehensive review on vanilla flavor: extraction, isolation and quantification of vanillin and other constituents," International Journal of Food Sciences and Nutrition 59.4 (2008): 299-326.

15.    While vanillin is the most abundant compound (MS Scan # 759, 77.4301 Peak Area %), numerous other compounds contribute to vanilla's taste in small amounts.

16.    Methyl cinnamate (MS Scan # 751) and p-cresol (MS Scan # 415) provide cinnamon and creamy flavor notes to vanilla.

17.    In early 2018, in response to rampant misleading labeling of vanilla products, flavor industry representatives urged their peers to truthfully label vanilla foods so that consumers are not misled. *See* John B. Hallagan and Joanna Drake, The Flavor and Extract Manufacturers Association of the United States ("FEMA"), "Labeling Vanilla Flavorings and Vanilla-Flavored Foods in the U.S.," Perfumer & Flavorist, Vol. 43 at p. 46, Apr. 25, 2018 ("Hallagan & Drake").[9]

18.    Hallagan and Drake's analysis began with the vanilla standards, promulgated in the 1960s to end practices which "deprive the consumer of value the product is represented to have, and for which the consumer pays," such as "the widespread and exceedingly serious adulteration of vanilla extracts that are now labeled 'pure.'"[10]

19.    By "establishing specific requirements for vanilla extract and other standardized vanilla products," it "insure[d]…all vanilla products are correctly labeled and meet at least minimum standards."[11]

20.    The goal of the vanilla regulations was to "assure that the consumer gets what is expected when purchasing vanilla products" and "to promote honest, fair dealing with housewives and other consumers of the flavorings covered by the standards."[12]

---

[9] Hallagan and Drake, "There are many current examples of food products that are labeled as 'vanilla' that are clearly mislabeled and therefore in violation of FDA regulations."

[10] Letter from McCormick & Company Inc. to HEW Secretary, January 15, 1960.

[11] *Id*; New York has adopted all federal regulations for food labeling through its Agriculture and Markets Law ("AGM") and accompanying regulations, Title 1, Official Compilation of Codes, Rules and Regulations of the State of New York ("NYCRR").

[12] Memorandum of Telephone Conversation between Mr. Alfred Daibock, Commercial Policy Division, Department of State and Tom Bellis, Food Standards Branch, FDA; Press Release U.S. Department of Health, Education, and Welfare, September 13, 1963.

21.   The vanilla standards are:

[A] series of individual standards that describe the common or usual name and recipes for eight flavorings: vanilla extract, concentrated vanilla extract, vanilla flavoring, concentrated vanilla flavoring, vanilla powder, vanilla-vanillin extract, vanilla-vanillin flavoring, and vanilla-vanillin powder.[13]

22.   Three of these standards "combine vanilla extract with the primary chemically defined flavoring substance in vanilla beans, vanillin."[14]

23.   The purpose of the vanilla regulations was to "require that food products be labeled accurately so that consumers can determine whether the product is flavored with a vanilla flavoring derived from vanilla beans, in whole or in part, or whether the food's vanilla flavor is provided by flavorings not derived from vanilla beans.[15]

24.   FEMA points out that the regulations for vanilla products "are supplemented by a formal FDA Advisory Opinion, and a collection of FDA-issued regulatory correspondence."[16]

25.   That Hallagan and Drake felt they needed to publicly identify the misleading labeling of vanilla products to their peers in the flavor and food industry is indicative that many are unaware, misunderstand or ignore vanilla labeling requirements.

26.   This confusion in labeling vanilla products is exacerbated because the regulations are not complete on their own but require incorporating external documents of limited availability.

27.   These resources include "a formal advisory opinion issued by FDA and a variety of regulatory correspondence issued by FDA in response to inquiries from other federal agencies, industry, and the public."

28.   These documents clarify the relationship between the general flavor regulations and

---

[13] *Id*.
[14] *Id*.
[15] Hallagan and Drake.
[16] Hallagan, endnote 7, FDA, 1983.

vanilla regulations:

> It is important to emphasize that these [at 21 CFR Sections 101.22(i)(1), (2) and (3)] regulations apply only to foods that are not subject to a federal standard of identity.
>
> …
>
> These regulations, found at 21 CFR Section 101.22, apply to all foods except for those subject to a federal standard of identity and this has often resulted in some confusion with the standards governing vanilla flavorings…that have their own requirements for proper labeling as required in FFDCA Section 403.
>
> Hallagan and Drake.

29.    Additionally, the "federal standard of identity for vanilla flavorings at 21 CFR Section 169 applies to both the flavorings sold directly to consumers and to food manufacturers for use in finished food products."[18]

30.    In non-vanilla flavors, a food which gets some flavor from the named, characterizing flavor, i.e., strawberry, and other flavor from natural sources other than the named flavor, i.e., cherries, which enhances, resembles and simulates the named flavor requires the front label to state "With Other Natural Flavor." *See* 21 C.F.R. § 101.22(i)(1)(iii); *see also* 21 U.S.C. § 343(i) (non-standardized flavors "may be designated as spices, flavorings, and colorings without naming each.").[19]

31.    However, the "standard of identity for vanilla flavorings does not provide for the designation of any vanilla flavorings as 'vanilla with other natural flavors' or 'vanilla WONF.'"[20]

32.    The Product's ingredient list designates "Natural Flavor" instead of an exclusively vanilla ingredient like "vanilla extract" or "vanilla flavoring." *See* 21 C.F.R. § 169.175 (b)(1)

---

[18] Hallagan and Drake.

[19] Hallagan and Drake, FEMA GRAS and U.S. Regulatory Authority: U.S. Flavor and Food Labeling Implications, Perfumer & Flavorist, Oct. 25, 2018; Charles Zapsalis et al., *Food chemistry and nutritional biochemistry*. Wiley, 1985, p. 611 (describing the flavor industry's goal to develop vanilla compound flavors "[T]hat *Seem*[s] to be Authentic or at Least Derived from a Natural Source") (emphasis added).

[20] Labeling Vanilla Flavors.

("The specified name of the food is 'Vanilla extract' or 'Extract of vanilla'"); see also 21 U.S.C. §343(g) (requiring ingredients to be listed with "the name of the food specified in the definition and standard").

**INGREDIENTS:** NONFAT MILK, HEAVY CREAM, CANE SUGAR, NATURAL FLAVOR.

**INGREDIENTS:** NONFAT MILK, HEAVY CREAM, CANE SUGAR, NATURAL FLAVOR.

33.    In a product with a characterizing flavor of vanilla, the designation of an ingredient as "natural flavor" means it is a combination of vanilla and non-vanilla flavor, known as "Vanilla With Other Natural Flavors" ("WONF").

34.    The purpose of not providing for the designation of "Vanilla WONF" was to prevent consumers from being misled by a small amount of vanilla, boosted by artificial vanilla flavors, including vanillin, maltol and piperonal.

35.    The Product's "Natural Flavor" consists of compounds which enhance, resemble, simulate, reinforce and extend the "complex array of flavor notes and aromas" of vanilla, "but are not derived from vanilla beans," and are therefore considered artificial flavors.[21] *See* Memorandum of Conference, Status of Vanilla Flavoring with other Natural Flavors, July 8, 1966 ("The vanilla standard determines vanilla as a standardized product. If other flavorings are added, then the vanilla is no longer a standardized product and should therefore be labeled artificial or imitation.").[22]

36.    These compounds include or may include maltol, piperonal and vanillin from non-vanilla sources, which provide much or most of the Product's vanilla taste.

---

[21] Hallagan and Drake, p. 48.
[22] Vanilla, Taste Foundations, Virginia Dare Company.

37.    Maltol "can improve overall flavor, potentiate sweetness, increase the sensation of creaminess" and has "a mild flavor and sweet caramel-like odor."[23]

38.    Maltol "can help to smooth authentic style vanilla bean flavors" at modest levels.[24]

39.    Piperonal contributes "a sweet vanilla olfactory note as well as a sweet, aromatic, vanilla, and benzaldehyde taste" and imparts "vanilla flavors to food and beverage products."[25]

40.    Vanillin is the "single most important individual flavoring substance in vanilla beans, and therefore in vanilla extract and other standardized vanilla flavorings."

41.    Even the addition to vanilla extract of non-vanilla vanillin "produced through a 'natural' process (i.e. a process consistent with the definition of natural flavor at 21 CFR Section 101.22(a) (3)) cannot be described as 'vanilla extract WONF,' 'vanilla WONF' or other similar descriptive terms."[26]

42.    This is because "vanillin is characterizing for vanilla and the addition of vanillin, whether derived from lignin or from other sources, must be clearly declared as in one of the three standardized vanilla flavorings."[27]

43.    These "standardized vanilla flavorings" include vanilla-vanillin extract and vanilla-vanillin flavoring, which combine vanilla and non-vanilla vanillin. *See* 21 C.F.R. § 169.180(b) ("Vanilla-vanillin extract"); 21 C.F.R. § 169.181(b) ("Vanilla-vanillin flavoring").

44.    When ingredients are used which contain vanilla and *any* vanillin, the ingredient list is required to state "'contains vanillin, an artificial flavor (or flavoring).'" *See* 21 C.F.R. § 169.180(b) and 21 C.F.R. § 169.181(b).

---

[23] Lisa Kobs, The Sweet Taste of Success – Part Two, Food Ingredients Online, 1998; Maltol, UL Prospector, Bryan W Nash & Sons Ltd.
[24] John Wright, Flavor Bites: Maltol, Perfumer & Flavorist, June 2020.
[25] C. B. Gnadinger, "Piperonal in Vanilla Extract." Industrial & Engineering Chemistry 18.6 (1926): 588-589; Piperonal, Moellhausen S.p.A., UL Prospector.
[26] Hallagan and Drake, p. 46.
[27] Hallagan and Drake.

45. The Product's ingredient list is misleading because even assuming the "Natural Flavor" is entirely from natural source material, it fails to tell consumers it contains artificial vanilla flavors, which provide much and/or most of the Product's vanilla taste.

46. Representing the Product as "Vanilla Flavor" without qualifying terms instead of "Natural and Artificially Flavored" or "Artificially Flavored" is deceptive and misleading to consumers.

47. Where a characterizing flavor is provided by a sufficient amount of the characterizing food ingredient, and the food contains no added flavor, this means the flavor designation is also an ingredient claim. *See* 21 C.F.R. § 101.22(i)(1)(i) (a strawberry shortcake which gets its flavor from the ingredient of strawberries).

48. Consumers, including Plaintiff, expect the Product's vanilla taste to only come from vanilla because they are accustomed to labels with terms such as "naturally flavored," "flavored," "artificial flavors" and "with other natural flavors." See 21 C.F.R. § 101.22(i)(1)(i) ("e.g., 'natural strawberry flavored shortcake,' or 'strawberry flavored shortcake'."); 21 C.F.R. § 101.22(i)(1)(ii) and 21 C.F.R. § 101.22(i)(2) ("artificially flavored"); 21 C.F.R. § 101.22(i)(1)(iii) ("with other natural flavor").

49. The Product's front label does not state "contains some vanilla" or "made with a drop of vanilla," but designates the characterizing flavor as "Vanilla" without qualifying terms.

50. Defendant knows consumers will pay more for the Product because the label only states "Vanilla Flavor."

51. Defendant's branding and packaging of the Product is designed to – and does – deceive, mislead, and defraud plaintiff and consumers.

52. Defendant sold more of the Product and at higher prices than it would have in the

absence of this misconduct, resulting in additional profits at the expense of consumers.

53.    The value of the Product that plaintiff purchased and consumed was materially less than its value as represented by defendant.

54.    Had plaintiff and class members known the truth, they would not have bought the Product or would have paid less for them.

55.    As a result of the false and misleading labeling, the Product is an sold at a premium price, approximately no less than $3.79 per 16 OZ, excluding tax, compared to other similar products represented in a non-misleading way, and higher than the price of the Product if it were represented in a non-misleading way.

<u>Jurisdiction and Venue</u>

56.    Jurisdiction is proper pursuant to Class Action Fairness Act of 2005 ("CAFA"). 28 U.S.C. § 1332(d)(2)

57.    Under CAFA, district courts have "original federal jurisdiction over class actions involving (1) an aggregate amount in controversy of at least $5,000,000; and (2) minimal diversity[.]" *Gold v. New York Life Ins. Co.*, 730 F.3d 137, 141 (2d Cir. 2013).

58.    Plaintiff Regina Carter is a citizen of New York.

59.    Defendant Nestlé USA, Inc., is a Delaware corporation with a principal place of business in Arlington, Arlington County, Virginia and is a citizen of Virginia.

60.    "Minimal diversity" exists because plaintiff Regina Carter and defendant are citizens of different states.

61.    Upon information and belief, sales of the Product in New York exceed $5 million per year, exclusive of interest and costs, and the aggregate amount in controversy exceeds $5 million per year.

62.   Venue is proper in this judicial district because a substantial part of the events or omissions giving rise to the claim occurred in this District, *viz*, the decision of plaintiff to purchase the Product and the misleading representations and/or their recognition as such.

63.   This court has personal jurisdiction over defendant because it conducts and transacts business, contracts to supply and supplies goods within New York.

<u>Parties</u>

64.   Plaintiff Regina Carter is a citizen of Mount Vernon, Westchester County, New York.

65.   Defendant Nestlé USA, Inc. is a Delaware corporation with a principal place of business in Arlington, Virginia, Arlington County and is a citizen of Virginia.

66.   Defendant is the U.S.-subsidiary of Nestle, the largest food company in the world.

67.   During the relevant statutes of limitations, plaintiff purchased the Product within her districts and/or States for personal and household consumption and/or use in reliance on the representations of the Product.

68.   Plaintiff Regina Carter purchased the Product on one or more occasions and at one or more locations, during the relevant period, at ShopRite, 8 Joyce Rd & Palmer Ave, New Rochelle, NY 10801, on or around  March 6, 2020.

69.   Plaintiff bought the Product at or exceeding the above-referenced prices because she liked the product for its intended use and relied upon the front label claim to expect its taste only came from the identified front label ingredient.

70.   Plaintiff was deceived by and relied upon the Product's deceptive labeling.

71.   Plaintiff would not have purchased the Product in the absence of Defendant's misrepresentations and omissions.

72.   The Product was worth less than what Plaintiff paid for it and she would not have

paid as much absent Defendant's false and misleading statements and omissions.

73.     Plaintiff intends to, seeks to, and will purchase the Product again when she can do so with the assurance that Product's labels are consistent with the Product's components.

Class Allegations

74.     The class will consist of all purchasers of the Product who reside in New York during the applicable statutes of limitations.

75.     Plaintiff seek class-wide injunctive relief based on Rule 23(b) in addition to a monetary relief class.

76.     Common questions of law or fact predominate and include whether defendant's representations were and are misleading and if plaintiff and class members are entitled to damages.

77.     Plaintiff's claims and basis for relief are typical to other members because all were subjected to the same unfair and deceptive representations and actions.

78.     Plaintiff is an adequate representatives because her interests do not conflict with other members.

79.     No individual inquiry is necessary since the focus is only on defendant's practices and the class is definable and ascertainable.

80.     Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

81.     Plaintiff's counsel is competent and experienced in complex class action litigation and intends to protect class members' interests adequately and fairly.

82.     Plaintiff seeks class-wide injunctive relief because the practices continue.

<u>New York General Business Law ("GBL") §§ 349 & 350,</u>
<u>(Consumer Protection Statute)</u>

83.   Plaintiff incorporates by reference all preceding paragraphs.

84.   Plaintiff and class members desired to purchase and consume products which were as described and marketed by defendant and expected by reasonable consumers, given the product type.

85.   Defendant's acts and omissions are not unique to the parties and have a broader impact on the public.

86.   Defendant misrepresented the substantive, quality, compositional and/or environmental attributes of the Product.

87.   The amount and proportion of the characterizing component, vanilla, has a material bearing on price and consumer acceptance of the Product and consumers do not expect non-vanilla, flavors where a product's characterizing flavor is labeled "vanilla flavor" without more.

88.   The ingredient list designation of "natural flavor" fails to tell consumers and plaintiffs that the Product contains non-vanilla flavors, and/or artificial flavors which may or does include vanillin from non-vanilla sources, maltol and piperonal.

89.   The front label omits qualifying terms required to modify a characterizing flavor's representation when such flavor is not provided exclusively by the characterizing food ingredient.

90.   The front label gives the impression the Product has more of the characterizing ingredient than it does.

91.   Plaintiff relied on the statements, omissions and representations of defendant, and defendant knew or should have known the falsity of same.

92.   Where applicable, defendant was provided adequate notice of the violation of relevant Massachusetts consumer protection laws.

14

93.     Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

<u>Negligent Misrepresentation</u>

94.     Plaintiff incorporates by reference all preceding paragraphs.

95.     Defendant misrepresented the substantive, quality, compositional and/or environmental attributes of the Product.

96.     The amount and proportion of the characterizing component, vanilla, has a material bearing on price and consumer acceptance of the Product and consumers do not expect non-vanilla, flavors where a product's characterizing flavor is labeled "vanilla flavor" without more.

97.     The ingredient list designation of "natural flavor" fails to tell consumers and plaintiffs that the Product contains non-vanilla flavors, and/or artificial flavors which may or does include vanillin from non-vanilla sources, maltol and piperonal.

98.     The front label omits qualifying terms required to modify a characterizing flavor's representation when such flavor is not provided exclusively by the characterizing food ingredient.

99.     The front label gives the impression the Product has more of the characterizing ingredient than it does.

100.    Defendant had a duty to disclose and/or provide non-deceptive marketing of the Product and knew or should have known same were false or misleading.

101.    This duty is based on defendant's position as an entity which has held itself out as having special knowledge and experience in the production, service and/or sale of the product type.

102.    The representations took advantage of consumers' cognitive shortcuts made at the point-of-sale and their trust in defendant, a well-known and respected brand or entity in this sector.

103.    Plaintiff and class members reasonably and justifiably relied on these negligent

misrepresentations and omissions, which served to induce and did induce, the purchase of the Product.

104.   Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

### Breaches of Express Warranty, Implied Warranty of Merchantability and Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq.*

105.   Plaintiff incorporates by reference all preceding paragraphs.

106.   The Product was manufactured, labeled and sold by defendant or at its express directions and instructions, and warranted to plaintiff and class members that they possessed substantive, quality, compositional and/or environmental which they did not.

107.   Defendant had a duty to disclose and/or provide non-deceptive descriptions and marketing of the Product.

108.   The amount and proportion of the characterizing component, vanilla, has a material bearing on price and consumer acceptance of the Product and consumers do not expect non-vanilla, flavors where a product's characterizing flavor is labeled "vanilla flavor" without more.

109.   The ingredient list designation of "natural flavor" fails to tell consumers and plaintiffs that the Product contains non-vanilla flavors, and/or artificial flavors which may or does include vanillin from non-vanilla sources, maltol and piperonal.

110.   The front label omits qualifying terms required to modify a characterizing flavor's representation when such flavor is not provided exclusively by the characterizing food ingredient.

111.   The front label gives the impression the Product has more of the characterizing ingredient than it does.

112.   This duty is based, in part, on defendant's position as one of the most recognized companies in the nation in this sector.

113.   Plaintiff provided or will provide notice to defendant, its agents, representatives, retailers and their employees.

114.   Defendant received notice and should have been aware of these misrepresentations due to numerous complaints by consumers to its main office over the past several years regarding the Product, of the type described here.

115.   The Product did not conform to its affirmations of fact and promises due to defendant's actions and were not merchantable.

116.   Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

<u>Fraud</u>

117.   Plaintiff incorporates by reference all preceding paragraphs.

118.   Defendant misrepresented the substantive, quality, compositional and/or environmental attributes of the Product.

119.   The amount and proportion of the characterizing component, vanilla, has a material bearing on price and consumer acceptance of the Product and consumers do not expect non-vanilla, flavors where a product's characterizing flavor is labeled "vanilla flavor" without more.

120.   The ingredient list designation of "natural flavor" fails to tell consumers and plaintiffs that the Product contains non-vanilla flavors, and/or artificial flavors which may or does include vanillin from non-vanilla sources, maltol and piperonal.

121.   The front label omits qualifying terms required to modify a characterizing flavor's representation when such flavor is not provided exclusively by the characterizing food ingredient.

122.   The front label gives the impression the Product has more of the characterizing ingredient than it does.

123.   Defendant's fraudulent intent is evinced by its failure to accurately identify the Product on the front label and ingredient list, when it knew its statements were neither true nor accurate and misled consumers.

124.   Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

<u>Unjust Enrichment</u>

125.   Plaintiff incorporates by reference all preceding paragraphs.

126.   Defendant obtained benefits and monies because the Product was not as represented and expected, to the detriment and impoverishment of plaintiff and class members, who seek restitution and disgorgement of inequitably obtained profits.

<u>Jury Demand and Prayer for Relief</u>

Plaintiff demands a jury trial on all issues.

  **WHEREFORE**, Plaintiff prays for judgment:

1.   Declaring this a proper class action, certifying plaintiff as representative and the undersigned as counsel for the class;

2.   Entering preliminary and permanent injunctive relief by directing defendant to correct the challenged practices to comply with the law;

3.   Injunctive relief to remove, correct and/or refrain from the challenged practices and representations, and restitution and disgorgement for members of the class pursuant to the applicable laws;

4.   Awarding monetary damages and interest pursuant to the common law and other statutory claims;

5.   Awarding costs and expenses, including reasonable fees for plaintiff's attorneys and experts; and

6.  Other and further relief as the Court deems just and proper.

Dated:   September 13, 2020

Respectfully submitted,

Sheehan & Associates, P.C.
/s/Spencer Sheehan
Spencer Sheehan
60 Cuttermill Rd Ste 409
Great Neck NY 11021-3104
Tel: (516) 303-0552
Fax: (516) 234-7800
*spencer@spencersheehan.com*
E.D.N.Y. # SS-8533
S.D.N.Y. # SS-2056

7:20-cv-07498
United States District Court
Southern District of New York

Regina Carter, individually and on behalf of all others similarly situated,

Plaintiff,

- against -

Nestlé USA, Inc.,

Defendant

## Class Action Complaint

```
Sheehan & Associates, P.C.
 60 Cuttermill Rd Ste 409
 Great Neck NY 11021-3104
    Tel: (516) 303-0552
    Fax: (516) 234-7800
```

Pursuant to 22 NYCRR 130-1.1, the undersigned, an attorney admitted to practice in the courts of New York State, certifies that, upon information, and belief, formed after an inquiry reasonable under the circumstances, the contentions contained in the annexed documents are not frivolous.

Dated: September 13, 2020

/s/ Spencer Sheehan
Spencer Sheehan